IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>for the use and benefit of<br>ACOUSTICAL CONCEPTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA,<br>and<br>FIDELITY AND DEPOSIT COMPANY<br>OF MARYLAND,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:08-cv-1030 |

FILED
JUL 17 2009
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Plaintiff, a subcontractor, brings this Miller Act, 40 U.S.C. § 3131 *et seq.*, suit against the co-sureties on payment bonds to recover for work performed on two federal construction projects pursuant to contracts with the projects' general contractor. Relying on the Miller Act's purpose of ensuring subcontractors' prompt payment for their work on federal construction projects, plaintiff sought summary judgment on the ground that it has not been paid for its completed work furnishing labor and materials on the two federal projects. Defendants opposed summary judgment, arguing that whether plaintiff has been paid in full is in dispute given that they, as sureties, are entitled to rely on the general contractor's claims against the subcontractor arising out of a non-federal construction project because each of the bonded federal construction subcontracts authorize the set off of such claims. In response, plaintiff contends that the Miller Act precludes sureties' reliance on setoff provisions.

Accordingly, at issue on plaintiff's motion for summary judgment is whether Miller Act

sureties are entitled to set off the general contractor's claims against the subcontractor arising out of a non-federal project where, as here, the federal construction subcontracts contain provisions expressly allowing the general contractor to set off any claims on unrelated projects it has against the subcontractor. On February 2, 2009, after briefing and oral argument, an Order issued denying plaintiff's motion for summary judgment and granting defendants' motion to stay pending resolution of litigation concerning the non-federal project. *See United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of America*, No. 1:08cv1030 (E.D. Va. Feb. 2, 2009) (Order). Thereafter, the Court, *sua sponte*, lifted the stay for the purpose of reconsidering the February 2, 2009 Order. And in this connection, the parties were allowed to submit supplemental briefs and oral arguments on the questions presented. As a result of this reconsideration, it is clear that the February 2, 2009 Order must be vacated and that summary judgment in favor of plaintiff must be granted in part and denied in part.

I.

In 2006, plaintiff entered into contracts with The Whiting-Turner Construction Company ("Whiting-Turner"), a general contractor, to provide carpentry, drywall, and other services as a subcontractor on three projects: (i) construction of an engineering building at NASA's Wallops Island Flight Center ("the Flight Center Project"); (ii) renovations at the Marine Corps Exchange in Quantico, Virginia ("the Quantico Project"); and (iii) Phase Two of Northrop Grumman's DD(X) Engineering Test Center in Wallops Island, Virginia ("the DD(X) Project"). The subcontracts between Whiting-Turner and plaintiff for the two federal construction projects—the Flight Center Project and the Quantico Project—contain identical setoff provisions, which provide, in part, that "[b]efore paying any amount due to the Subcontractor as provided hereinabove, the Contractor," *i.e.*,

Whiting-Turner, may offset payment in the amount of any unrelated claims against the subcontractor.[1]

Work on the two federal construction projects was secured by payment bonds posted by Whiting-Turner, as the principal, and defendants, as co-sureties. The payment bonds are standard Miller Act payment bonds and provide that

> [t]he above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal *for furnishing labor, material or both* in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made.

Compl. Ex. A at 2; *id.* Ex. C at 2 (emphasis added).

Plaintiff completed its work on the Quantico Project in April 2008. The parties dispute the completion date for plaintiff's work on the Flight Center Project; plaintiff asserts it completed work on December 3, 2007, while defendants contend plaintiff completed work in July 2007 and subsequently returned to the construction site only to provide repair work. Both parties agree that plaintiff has fully performed its obligations under the Quantico Project subcontract and the Flight Center Project subcontract.

---

[1] The setoff provisions in both subcontracts are identical and read as follows:

> Before paying any amount due to the Subcontractor as provided hereinabove, the Contractor is hereby authorized to deduct therefrom and offset an amount equal to any and all sums or obligations owing by the Subcontractor to the Contractor and costs necessary to complete the work to be performed under this Subcontract, and any and all claims liquidated or unliquidated, by the Contractor against the Subcontractor, arising hereunder, under any other contract or agreement between the Subcontractor and the Contractor or from any other liability or obligation of the Subcontractor to the Contractor whether under this Subcontract or otherwise.

Buscarini Decl. Ex. 1 at 6–7; *id.* Ex. 2 at 6.

A dispute exists between Whiting-Turner and plaintiff regarding plaintiff's performance under the non-federal DD(X) Project subcontract and, on September 5, 2008, Whiting-Turner filed an action against plaintiff in the Circuit Court for Baltimore County, Maryland, seeking to recover $1.1 million for breach of that subcontract. On September 29, 2008, plaintiff filed a counter-claim seeking to recover $471,587 for breach of the DD(X) Project subcontract and tortious interference with contractual relations.

Relying on the setoff provisions in its subcontracts with plaintiff for the federal construction projects, Whiting-Turner withheld payments it concedes it otherwise would have owed plaintiff under those subcontracts to offset its claims relating to the DD(X) Project.[2] On October 1, 2008, plaintiff filed the instant action against defendants, seeking to recover $149,113.94 for the Quantico Project and $77,102.37 for the Flight Center Project.[3] On November 3, 2008, Whiting-Turner amended its complaint in the Circuit Court of Baltimore County, Maryland, seeking a declaration (i) that Whiting-Turner properly deducted the balance otherwise payable to plaintiff relating to the Quantico and Flight Center Projects and (ii) that Whiting-Turner owes no further payments to plaintiff under either the Quantico Project subcontract or the Flight Center Project subcontract.[4]

---

[2] In a declaration attached to defendants' opposition to plaintiff's summary judgment motion, Raymond Buscarini, a group manager with Whiting-Turner, states that Whiting-Turner deducted from its losses on the DD(X) Project a balance of $149,113.88 for the Quantico Project and a balance of $71,618.33 for the Flight Center Project. Buscarini Decl. at 4.

[3] Thus, the amount plaintiff claims it is owed for the Quantico Project is only six cents more than the amount Whiting-Turner asserts it legitimately withheld under its subcontract with plaintiff for that project, while the amount plaintiff claims for the Flight Center Project is $5,484.04 more than the amount Whiting-Turner argues it properly withheld.

[4] At this time, the litigation in the Circuit Court of Baltimore County, Maryland is ongoing.

Plaintiff then filed a motion for summary judgment in this action, asserting that defendants do not genuinely dispute the amount owed for work on the Quantico and Flight Center Projects and that defendants, as sureties, are not entitled to rely on the setoff provisions contained within the subcontracts for those projects.

## II.

The summary judgment standard is too well settled to require elaboration here. In essence, summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment, the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

The Miller Act provides that before a contract exceeding $100,000 for the construction of any federal public work is awarded, the contractor must furnish a payment bond with a surety "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). The Act further provides that "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished . . . and that has not been paid in full . . . may bring a civil action on the payment bond for the amount unpaid." *Id.* § 3133(b)(1). A cause of action under the Miller Act accrues "90 days after the day on which the person did or performed the last of the labor . . . for which the claim is made" and "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* § 3133(b).

In general, a surety assumes only the liability of its principal. *See Bd. of Supervisors v. S. Cross Coal Corp.*, 238 Va. 91, 96 (1989) ("The surety's liability to the obligee is measured by that of the principal."). That this general principle of suretyship law ordinarily applies with equal force to Miller Act sureties is made clear by the language of the statute, which creates a cause of action against the surety to the extent a subcontractor "has not been paid in full" and allows the subcontractor to recover only "the amount unpaid." 40 U.S.C. § 3133(b)(1). Yet, general principles of suretyship law that conflict with the Miller Act's terms and purpose must give way to the Act. *See United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1208 (9th Cir. 2002) ("[T]he liability of a surety and its principal on a Miller Act payment bond is coextensive with the contractual liability of the principal only to the extent that it is consistent with the rights and obligations created under the Miller Act."); *Morganti Nat'l, Inc. v. Petri Mech. Co.*, No. 3:98cv309, 2004 WL 1091743, at *11 (D. Conn. 2004) ("As a general matter, a surety's liability is defined by the liability of the underlying contract. This is true for a Miller Act surety with the exception that this rule cannot, of course, conflict with the actual terms of the Miller Act.").

These principles, applied here, point persuasively to the conclusion that defendants are not entitled to rely on Whiting-Turner's claim that plaintiff breached the DD(X) Project subcontract as a setoff defense to liability on the bond. The analysis leading to this conclusion may be succinctly summarized as follows:

> (1) The Miller Act was enacted to ensure that subcontractors are paid for labor and materials expended on federal projects. To this end, the Miller Act requires prime contractors on federal projects to post a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract" and provides subcontractors with a cause of action to sue on the payment bond for any amount unpaid. 40 U.S.C. §§ 3131(b)(2), 3133(b)(1).

(2) As required by the Miller Act, Whiting-Turner purchased payment bonds from defendants for each of the federal projects, which bonds, as also required by the Miller Act, promise to pay plaintiff for labor and materials provided to each of the federal projects in the event Whiting-Turner fails to do so.

(3) Whether a subcontractor has been paid in full for providing labor and materials must be determined by reference to the underlying subcontract as it relates to the scope of the work and the payment terms.[5] The subcontracts in the instant case are time and materials contracts, and both contain a payment clause requiring Whiting-Turner to pay plaintiff for labor and materials provided to the federal projects. Buscarini Decl. Ex. 1 at 6–7; *id.* Ex. 2 at 6.

(4) Although the subcontracts contain setoff provisions, these provisions are distinct from, and do not relate to, the amount owed to plaintiff for providing labor and materials on the federal construction projects. Neither the Miller Act nor the payment bonds make any reference to setoff provisions.

(5) Because the setoff provisions would delay and complicate payment to plaintiff, these provisions contravene the Miller Act's purpose of providing prompt payment to subcontractors for providing labor and materials to federal construction projects. Accordingly, defendant sureties may not, in reliance on the setoff provisions, assert Whiting-Turner's claim that plaintiff breached the separate, non-federal DD(X) Project in order to argue that plaintiff has been paid in full for providing labor and materials to the federal construction projects.

Each step in the analysis merits some elaboration.

The first step is uncontroversial; there is no dispute that the Miller Act's purpose is to ensure that subcontractors are promptly paid in full for furnishing labor and materials to federal construction projects. *See, e.g., United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217 (1957) ("The essence of [the Miller Act's] policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material."). In effect, therefore, the Miller Act provides subcontractors on federal construction projects with the functional equivalent of a mechanic's lien typically available to subcontractors on non-federal projects. Where, as here,

---

[5] *See United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976).

a subcontractor has not received payment from the general contractor, the Miller Act is designed to provide the subcontractor with a prompt means of recovering payment from the surety for providing labor and materials to the federal project.

The second step is also undisputed; the provisions of the payment bond are a matter of record in this case, and they are consistent with the Miller Act's requirements. Both payment bonds stipulate that defendants' obligation is void only if Whiting-Turner "promptly makes payment to all persons having a direct relationship with [Whiting-Turner] or a subcontractor of [Whiting-Turner] for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above." Compl. Ex. A at 2; *id.* Ex. C at 2. That is to say, failure by Whiting-Turner to pay plaintiff promptly for providing labor and materials to the two federal construction projects triggers defendants' payment bond obligation.

The third step of the analysis focuses on ascertaining the amount due a subcontractor for furnishing labor and materials to a federal construction project. It is self-evident that the subcontract must be examined to ascertain what amount is due a subcontractor, for it is the subcontract that defines the subcontractor's scope of work and the measure of payment for that work, *i.e.*, whether by fixed price, time and materials, profits, or some other appropriate means. And indeed, there is circuit precedent for this proposition. In *United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976), a Miller Act case not involving setoff, the Fourth Circuit, in a brief opinion, held that a subcontractor "is entitled to recover the 'sums justly due.' This amount must be determined by reference to the subcontract."[6] Defendants seek, unsuccessfully, to

---

[6] Under the prior version of the Miller Act, a subcontractor on a federal construction project was entitled to the "sums justly due" for providing labor and materials. *See* 40 U.S.C. § 270(b)(1) (2001). The 2002 amendments to the Miller Act were not intended to change the

stretch the *Woodington* holding to encompass the instant facts; that effort fails because *Woodington* neither involved nor addressed whether a setoff may be asserted by a surety where, as here, the payment bond does not refer to the setoff provisions and instead requires payment for providing labor and materials. Read carefully, *Woodington* stands, at most, for the proposition that, in a Miller Act case, reference to the subcontract must be made to define the manner of payment in order to determine sums due to the subcontractor for providing labor and materials; the subcontracts in the instant case are clearly time and materials contracts.[7]

The fourth step in the analysis notes the fact that the subcontracts contain setoff provisions that are distinct from, and do not relate to, the amount owed to plaintiff for providing labor and materials to the two federal construction projects. Despite defendants' arguments to the contrary, the setoff provisions at issue here are not designed to ensure that plaintiff is compensated for having provided labor and materials on the two federal projects. Rather, the setoff provisions "function[] mostly as a convenient method of dealing with mutual, unrelated debts." *United Structures of Am.,*

---

substance of the Act. *See United States ex. rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104, 116 n.3 (D.D.C. 2006) (citing H.R. Rep. No. 107-479, at 2 (2002), *reprinted in* 2002 U.S.C.C.A.N. 827, 827–28).

[7] Both federal construction project subcontracts contain identical payment provisions which provide, in pertinent part, that:

> The Contractor shall . . . pay to the Subcontractor an amount equal to ninety percent (90%) of the value of the work performed by the Subcontractor as determined by the Architect and approved by the Contractor during any calendar month . . . . Retainage and any other balance of the Contract Amount shall be payable fifteen (15) days . . . after the work under this Agreement has been completed and accepted by the Owner, Architect, and Contractor . . . provided that Subcontractor has fully performed all of its obligations hereunder.

Buscarini Decl. Ex. 1 at 6–7; *id.* Ex. 2 at 6.

*Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 999 (1st Cir. 1993). Moreover, neither the Miller Act nor the payment bonds make any reference to setoff provisions or their effect.[8] This is significant because the setoff provisions have the potential to delay and complicate significantly any recovery by plaintiff subcontractor on the Miller Act payment bonds. Precisely this is what the Miller Act is aimed to prevent.

The final step in the analysis is the crux of this decision. To allow sureties to interject a setoff defense in a suit on the payment bond, where, as here, neither the Miller Act nor the payment bond refer to such provisions, would result in a situation directly contrary to the Miller Act's purpose of providing an expeditious remedy to subcontractors on federal construction projects. The facts of this case perfectly illustrate this situation. Were defendants allowed to interpose a setoff defense involving facts and circumstances relating to a non-federal project, plaintiff subcontractor would be forced to litigate with defendant sureties a dispute that plaintiff has with its general contractor, Whiting-Turner, that is nowhere a part of the payment bonds or the Miller Act. The result can only be the kind of delay and complexity the Miller Act was designed to avoid. By contrast, preventing sureties from asserting a setoff defense leads to the sensible result—contemplated by the Miller Act—that a subcontractor on two federal construction projects receives timely payment for providing labor and materials to those projects. Defendant sureties may then seek to recover from the principal, Whiting-Turner, the full amounts paid to plaintiff, and Whiting-Turner may then litigate

---

[8] The Fourth Circuit has held that, under Virginia law, a surety may not "assert the principal's defense based on 'pay when paid' language in the subcontract, where the surety did not expressly incorporate the 'pay when paid' language into the contract payment bond." *Moore Brothers Co. v. Brown & Root, Inc.*, 207 F.3d 717, 723 (4th Cir. 2000). Although the present case must be determined under federal law, the Fourth Circuit's reasoning in *Moore Brothers* is nonetheless persuasive.

the unrelated, non-federal dispute with plaintiff. In other words, the result reached here maintains a sharp division between the Miller Act's remedy for subcontractors on federal construction projects and disputes between subcontractors and prime contractors arising from non-federal constructions projects that are not governed by the Miller Act.

No case has been found, nor is any cited by either party, that is directly on point with the instant facts. Nevertheless, factually similar cases in other jurisdictions support the reasoning and the result reached here. It is well settled that sureties may not rely on subcontract terms affecting the timing of a subcontractor's recovery for providing labor and materials that conflict with the Miller Act's purpose of ensuring prompt payment to subcontractors on federal construction projects.[9] In contravention of this purpose, setoff provisions like those at issue here necessarily delay payment to subcontractors on federal construction projects by forcing subcontractors to pursue potentially protracted litigation.[10] Moreover, to permit surety reliance on setoff provisions creates the possibility

---

[9] *See Walton Tech.*, 290 F.3d at 1208 (holding that sureties may not assert a subcontract's unsatisfied "pay when and if paid" clause as a defense to liability on a Miller Act payment bond because a "subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, not 'when and if' the prime contractor is paid by the government"); *United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mutual Fire Ins. Co. of Tex.*, 942 F.2d 946, 949 n.6 (5th Cir. 1991) (holding that subcontract's "pay-when-paid" clause does not preclude subcontractor's action against a Miller Act surety "because, under the Miller Act, the liability of the contractor is to the subcontractor, despite non-payment by the government to the contractor").

[10] It is important to acknowledge that some courts have drawn a distinction between provisions affecting only the *timing* of recovery and those affecting only the *measure* of recovery. *See Walton Tech.*, 290 F.3d at 1207 (noting that "[c]onsiderable differences exist" between a case in which the measure of recovery is determined by subcontract terms and one in which the timing of recovery is dictated by such terms). This distinction is without effect, however, where, as here, the setoff provisions in issue potentially affect both the measure and timing of payments due a subcontractor on a federal project and hence operate to frustrate the Miller Act's purpose. *Accord. United States ex rel. Pertun Const. Co. v. Harvesters Group, Inc.*, 918 F.2d 915, 918 (11th Cir. 1990) ("Only by allowing a full recovery of [actual] costs [of providing labor and

that a subcontractor with substantial, unrelated debts to a general contractor for work on non-federal projects could receive *no* payment for furnishing labor and material to a federal project. Such an absurd result is anathema to the Miller Act's express purpose of providing protection to federal construction subcontractors. *See Walton Tech.*, 290 F.3d at 1207 ("Where subcontract terms [a]ffect the timing of recovery or *the right of recovery* under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." (emphasis added)).

Finally, defendants cite three cases, mistakenly arguing that they stand for the proposition that the amount due to a Miller Act subcontractor includes contractual setoff provisions. Defendants' reliance on these cases is misplaced; none involve the facts presented here. Rather, each case addresses only the availability of a recoupment defense and does not involve, nor adequately address, whether a surety may rely on a setoff provision in the circumstances presented here.[11] Further undermining defendants' reliance on these cases is the fact that the leading circuit court decision, on which all three cases rely, expressly and unequivocally avoids reaching a definitive conclusion on the issue of the effect of a setoff in the circumstances of this case. *See United Structures*, 9 F.3d at 999 ("Since a true setoff is not before us, however, we need only note the difference and need not go beyond the subject of recoupment to consider when or whether setoff is

---

materials], including those portions caused by delay, can the purpose of the statute—to afford the subcontractor the financial protection of an action against the surety—be achieved.").

[11] All three cases, *United States ex rel. Andrews Marine Services, Inc. v. United Surety & Indemnity Co.*, No. 04-1135, 2005 WL 1308919 (D.P.R. June 1, 2005), *United States ex rel. Ascher Bros. Co. v. American Home Assurance Co.*, No. 98-C-995, 2003 WL 1338020 (N.D. Ill. Mar. 18, 2003), and *United States ex rel. Hussmann Corp. v. Fidelity & Deposit Co. of Maryland*, 999 F. Supp. 734, 747–48 (D.N.J. 1998), concerned (i) a single project location; (ii) some default or error on the subcontractor's part; (iii) a subsequent correction by the contractor at its own expense; and (iv) a recoupment defense for the cost of the correction.

unavailable under the Miller Act."). Despite defendants' arguments, there is no precedent, in this jurisdiction or any other, that specifically addresses the availability of a setoff defense to a Miller Act surety.

In sum, defendant sureties, for the reasons stated, may not rely on the setoff provisions in the subcontracts that refer to amounts plaintiff may owe the prime contractor in connection with an unrelated, non-Miller Act project. It follows that plaintiff is entitled to summary judgment on its claims on the payment bonds to the extent that there are no genuinely disputed material facts as to the amounts due under the bond. There is no disputed material fact as to the Quantico Project and thus summary judgment, with respect to the payment bond on this project, is appropriate.

The same conclusion is not warranted with respect to the Flight Center Project as there remains an issue of material fact that precludes summary judgment. The Miller Act requires subcontractors to bring any claims on a payment bond within one year after the day on which the last of the work was performed or material was supplied to the federal construction project. The beginning of this one-year statute of limitations is determined by "whether the work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *United States ex rel. Noland Co. v. Andrews*, 406 F.2d 790, 792 (4th Cir. 1969) (citation and internal quotation marks omitted). In this respect, the parties submitted affidavits reflecting their dispute over whether the post-July 2007 work was repair work or work performed as part of the original contract. If the post-July 2007 work is found to be repair work, plaintiff's claim would be time barred. The parties' conflicting affidavits present an issue of material fact to be decided at trial, thus rendering summary judgment as to the Flight

Center Project inappropriate.

An appropriate order will issue.

Alexandria, Virginia
July 17, 2009

/s/
T. S. Ellis, III
United States District Judge